JOHN COMSTOCK

*v.*

JOHN C. COVER.

1. TAX SALES—*from what time interest to be computed on redemption—construction of act of* 1853. Under the revenue law of 1845, lands sold for taxes were redeemable within two years, by the payment of double the amount for which they were sold, and all taxes accruing after such sale, with six per cent. interest on such paid taxes, if any were paid, from the first day of May in each year up to the time of payment.

2. The act of 1853, amendatory of the law of 1845, changes the rate of interest from six to ten per cent., but fixes no certain day from which it shall be computed, except that it shall be from the day of sale, whenever that might be. The "day of sale" here alluded to is the day on which a sale might take place in each year

if the taxes were not paid, and not the day of the first sale under which the tax purchaser claims.

3. SAME — *and herein, that the interest shall be computed only on the subsequent taxes paid.* The reason and spirit of the act of 1853 is, to give the purchaser, not only double the amount he paid at the sale for taxes, but ten per cent. on all moneys he may have subsequently disbursed for annual taxes since that sale, computing the same from the day when a sale might have been made, in case the taxes were not paid. If he pays no taxes he can claim no interest.

4. CONSTRUCTION OF STATUTES — *contemporaneous construction.* The doctrine is, when a statute uses language of doubtful import, acting under it for a long course of years in one way may well give an interpretation to that obscure meaning, and reduce that uncertainty to a fixed rule.

APPEAL from the Circuit Court of Knox county; the Hon. CHARLES B. LAWRENCE, Judge, presiding.

This was an application for a mandamus, made at the September Term, 1863, of the Knox county Circuit Court, by the appellant, to require John C. Cover, sheriff of Knox county, to show cause why he should not be compelled to make and execute certain tax deeds to appellant.

The petition sets out that appellee was, and had been for ——— months, the acting sheriff, legally elected and qualified, of Knox county. That on the 24th day of June, 1861, at a public sale of lands for taxes, in Knox county, the following described lands were offered for sale by the collector of said county, for the taxes and costs due thereon, for the year 1860, to wit: 159 acres of the N. W. 12, 13 N. 3 E., and 155 acres of the S. E. 20, 13 N. 4 E. That petitioner became the purchaser of each of said tracts, and for the first tract mentioned bid $13.80, and for the second $13.55, and as evidence thereof sets out the following certificate:

" STATE OF ILLINOIS, ⎱ ss.
  KNOX COUNTY,  ⎰
         CLERK'S OFFICE COUNTY COURT, ⎱
           KNOXVILLE, *June* 24, 1861. ⎰

This is to certify that John Comstock did, on the 24th day of June, 1861, purchase at public sale the following described tract of land for the tax and cost due thereon, for the year

1860, and that he will be entitled to a deed for the same immediately after the expiration of the term of two years from the day of said sale, upon the return of this certificate: Provided he shall have complied with the statute in such cases made and provided, or the same shall not have been previously redeemed.

| Amount offered. | Description. | Acres sold. | Amount of tax, interest and cost. |
|---|---|---|---|
| 159 | N.W. 12, 13 N. 3 E. | 159 | $13 80 |
| 155 | S. E. 20, 13 N. 4 E. | 155 | 13 55 |

JOHN S. WINTER,
*Clerk of the County Court Knox County, Illinois.*

Received the purchase-money on the above certificate of purchase.     GEORGE DAVIS,
*Collector of Knox County, Illinois.*"

That petitioner then and there bid off said tracts of land for the sums specified, and the same were struck off to him, each tract having been offered and sold separately. That afterwards, on the 24th of May, 1862, petitioner paid the taxes for the year 1861, on the first named tract, amounting to $11.62, to the collector of Knox county; and on the 5th day of June, 1862, he paid the collector of said county the taxes of 1861, on the second tract, being $9.97. And on the 25th of March, 1863, he paid said collector the taxes of 1862 on each of said tracts of land; on the first $22.35, on the second $11.45.

That said tracts remained vacant and unoccupied from the time of such sale until the present time, and have not been redeemed. That on the 9th of June, 1862, he caused notice, hereinafter set forth, to be published in the Knox Republican, a newspaper printed in Knoxville, Knox county, Illinois, for three successive weeks thereafter, the last of which was three months previous to the time of redemption, and which is as follows:

"This 24th day of September, 1863, personally appeared before J. S. Starr, a notary public for Peoria, Peoria county, and State of Illinois, John Comstock, who, after being duly sworn according to law, deposes and says, that at a public sale of lands and town lots, for the delinquent taxes and costs, due

and unpaid thereon, to the county of Knox and State of Illinois, for the year 1860, held at the court house in Knox county, and State of Illinois, on the 24th day of June, 1861, John Comstock did purchase the following tracts of land, known as the N. W. 12, 13 N. 3 E., for the sum of $13.80, and the S. E. 20, 13 N. 4 E., for the sum of $13.55. The N. W. 12, 13 N. 3 E., was listed to W. B. Denman, and the S. E. 20, 13 N. 4 E., to S. F. Green, neither of said persons residing in said county of Knox during the two years subsequent to said sale for taxes to him, the said John Comstock. Said land was vacant and unoccupied, and no one was in possession on whom to serve notice of the sale, and when the time of redemption would expire. This affiant caused notice to be published in the Knox Republican, a newspaper printed and published in the county of Knox and State of Illinois, as follows:

Notice is hereby given that at a public sale of lands and town lots for the delinquent taxes and costs due thereon to the State of Illinois and county of Knox, for the year 1860, held at the court house in said county and State on the 24th day of June, 1861, John Comstock did purchase the N. W. 12, 13 N., 3 E., for the sum of $13.80, and the S. E. 20, 13 N. 4 E., for the sum of $13.55, and that the time of redemption from said tax sale would expire on the 24th day of June, 1863. Said notice was first published in said newspaper on the ninth day of June, 1862, and three consecutive weeks thereafter.

JOHN COMSTOCK.

Sworn and subscribed to before me the day and year aforesaid.

[L. S.]                          JULIUS S. STARR.

That he made affidavit of such facts and of all matters required by law to entitle him to a deed, and on or about the 30th of June, 1863, delivered such affidavit to the sheriff of said county, who was authorized to execute a tax deed for said premises, and on or about the 30th of June, 1863, after the time for redeeming said land had expired, the same not having been redeemed according to law, he presented to said John C. Cover, sheriff of said county, the original certificate of pur-

chase as above set forth, and tendered to said sheriff a sufficient amount of money to pay all expenses for making deeds to said tract of land, and required and demanded of said sheriff that he make and execute deeds to said tracts, which the sheriff refused to do.

Respondent answers petition, admitting all the facts therein set forth, excepting as to the redemption of said land, and for return to petition, says that said lands were duly and legally redeemed on the 1st of June, 1863, by one Silas T. Green, who deposited with the clerk of said court the sum of $65.83, to redeem the N. W. 12, 13 N. 3 E., and $51.53 to redeem the S. E. 20, 13 N. 4 E., which redemption was made in treasury notes, and has been tendered to said Comstock, and refused by him. The following mode of computing the amount of redemption, is deemed by respondent correct, N. W. 12, 13 N. 3 E. sold in 1861, for taxes of 1860, to John Comstock for $13.80.

Redemption money deposited May 16, 1863, by M. B. Denman, as follows:

| | | |
|---|---:|---:|
| For Redemption, | $27 | 60 |
| " Tax of 1861, | 11 | 50 |
| " Int. on same, | 1 | 15 |
| " Tax of 1862, | 22 | 35 |
| Int. at 10 per cent., | 2 | 23 |
| " Advertising, | 1 | 00 |
| Amount deposited, | $65 | 83 |

S. E. 20, 13 N. 4 E., sold in 1861 for taxes of 1860, to John Comstock for $13.55.

Redemption money deposited June 1st, 1863, by Silas T. Green, as follows:

| | | |
|---|---:|---:|
| For Redemption, | $27 | 20 |
| " Tax of 1861 paid by John Comstock, | 9 | 85 |
| " Int. on tax of 1861, | | 98 |
| " Tax 1862 pd. by John Comstock, | 11 | 45 |
| " Int. on same, | 1 | 15 |
| " Advertising, | 1 | 00 |
| Amount deposited, | $51 | 53 |

Respondent, therefore, insists that said tracts of land have been legally redeemed, and that he ought not to be compelled to make a deed therefor.

There was filed in this case, October 1st, 1863, the following agreement:

"It is agreed in this case that if the judge of this court shall be of opinion upon the above facts that a mandamus should issue, that it shall be a peremptory mandamus, and that either party may take the case to the Supreme Court the same as if this agreement had not been made.

(Signed)      H. M. WEAD, <em>Att'y for Pl'ff.</em><br>JOHN C. COVER."

Appellant filed a demurrer to respondent's answer, and referred the court to the following statement, as being the *correct* way of computing the amount due on the redemption of said lands.

N., W. 12, 13 N. 3 E., $13.80, sale June 24, 1861.

| | |
|---|---:|
| Redemption May 16, 1863, | $27 60 |
| Tax of 1861, | 11 50 |
| 1 yr, 10 mos. 22d., int. on do, | 2 15 |
| Tax of 1862, | 22 35 |
| Interest, | 3 18 |
| Advertising, | 1 00 |
| | $67 78 |
| (Estimate by clerk) Winter, | 65 83 |
| | $1 95 |

S., E. 20, 13 N. 4 E., Sale 24 June, 1861, $13 55.

Redemption June 1, 1863:

| | |
|---|---:|
| Redemption, | 27 10 |
| Tax of 1861, | 9 97 |
| Interest 1yr. 11mo. 6d., | 1 94 |
| Tax of 1862, | 11 45 |
| Interest, | 2 19 |
| Advertising, | 1 00 |
| | $53 66 |
| (Estimate by clerk) Winter, | 51 53 |
| | $2 12 |

The court overruled appellant's demurrer, and ordered that the writ of mandamus be refused and defendant recover costs of plaintiff and have execution therefor. Whereupon, the plaintiff brings his appeal to this court.

Mr. H. M. WEAD, for the appellant.

Mr. T. G. FROST, for the appellee.

MR. JUSTICE BREESE delivered the opinion of the Court:

This record presents the question from what time is interest to be computed, upon the taxes a purchaser, at a sale of land for taxes, may have paid, when the land is sought to be redeemed.

Section forty-three of the revenue law of eighteen hundred and fifty-three, provides, that real property sold under it, may be redeemed at any time before the expiration of two years from the date of sale, by the payment to the clerk of the county court, of double the amount for which the same was sold, and all taxes accruing after such sale with ten per cent. interest thereon, from the day of sale, unless such subsequent tax has been paid by the person for whose benefit the redemption is made. Scates' Comp., 1078.

The appellant contends, that the interest upon the taxes paid by the purchaser at the tax sale subsequent to such sale, is to be computed from the day of the first sale, whereas the appellee contends, that the interest upon the taxes of each year is to be computed from the day of sale for such year.

If the appellant's view is the proper one, then the land in this case, has not been legally redeemed, and the appellee should be compelled to make the deed to him.

The meaning of the section cited, is not so perspicuous as it might have been made, yet it is not difficult to discover the intention of the legislature from the language used and the object to be attained.

The act of 1853, is amendatory of the revenue law of 1845,

under which, lands sold for taxes were redeemable within two years by the payment of double the amount for which they were sold, and all taxes accruing after such sale, with six per cent. interest on such paid taxes, if any are paid, from the first day of May, in each year, up to the time of payment.

The reason for fixing the first day of May in each year, as the day from which interest should be computed is obvious. By that act, the taxes were due and payable on that day, and if they were not paid, a sale followed in June thereafter for the unpaid taxes and costs. The first day of May was, therefore, a proper starting point for the computation of interest. The act of 1853 changes the rate of interest from six to ten per cent., but fixes no certain day from which it shall be computed except that it shall be from the day of sale, whenever that might be. The day of sale here alluded to, is, we think, the day on which a sale might take place in each year, if the taxes were not paid, and not the day of the first sale under which the tax purchaser claims. It is not to be supposed that the legislature, as against minor heirs or married women, intended that money paid for the annual taxes, should draw interest at the rate of ten per cent. per annum, for a term of years before the money was actually paid, which would be the case on the construction contended for by the appellant, thus making the money bear interest retrospectively.

A sufficient reason for substituting the day of sale for the first day of May, may be found in the fact that the infant owner of a tract of land, or a married woman, had a right to pay the taxes at any time prior to the day of sale, and hence, not being in default until that day, there was propriety in fixing that as the date when the interest should begin to run. Another, and perhaps a more satisfactory reason why the legislature should make the interest begin to run from the date of the sale of the current year, instead of from the time of the actual payment of the taxes by the tax purchaser is, that the day of actual payment could not always be determined by the officers when redemption is sought to be made, while the day of the tax sale would always appear from the records of the

office, and the amount of redemption money be readily and certainly ascertained.

The reason and spirit of this section is, we think, to give the purchaser, not only double the amount he paid at the sale for taxes, but ten per cent. on all moneys he may have subsequently disbursed for annual taxes, since that sale, computing the same from the day when the sale might have been made, in case the taxes were not paid. If he pays no taxes he can claim no interest.

This construction, we believe, has with great uniformity been given to this section, by the officers required to act under it, and is in harmony with reason and justice. The doctrine is, where a statute uses language of doubtful import, acting under it for a long course of years in one way, may well give an interpretation to that obscure meaning, and reduce that uncertainty to a fixed rule.

The Circuit Court having entertained similar views, its judgment must be affirmed.

*Judgment affirmed.*