Village of Broadview, Appellee, v. John Toman and the County of Cook, Appellants.

Gen. No. 40,809.

Opinion filed April 15, 1941.

Thomas J. Courtney, State's Attorney, for appellants; Marshall V. Kearney, Jacob Shamberg and Brendan Q. O'Brien, Assistant State's Attorneys, of counsel.

Erwin A. Stanicek, of Chicago, for appellee; B. F. Langworthy, of Chicago, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

An appeal from a summary judgment in the sum of $5,379.50 entered in an action at law brought by plain-

tiff, appellee, against defendants, appellants, to recover certain sums of money collected by the County Collector of Cook county of instalments of special assessments of the plaintiff Village returned delinquent for the years 1935 and 1936. The suit involves the right of the County Collector to retain out of collections made by him the sum of fifty cents per item for each delinquent special assessment returned delinquent by him and on which he made no collection.

The complaint states that plaintiff is a duly organized municipal corporation, and alleges, in substance, that the County Collector retained $5,455 of $5,626.42 collected by him between August 1, 1936, and April 15, 1937, on instalments of special assessments returned delinquent for the years 1935 and 1936; that the Collector remitted the difference, $171.42, to the village treasurer of plaintiff; that defendants are indebted to plaintiff in said sum of $5,455, being fifty cents per item on 10,910 items returned delinquent; that said sums may now constitute a part of the general corporate fund of the County of Cook and in that event said County is indebted to plaintiff for such sum. Defendants' second amended answer to the complaint admits the retention of said amount, but states, *inter alia,* that such sum is the amount provided and allowed by the statutes (hereinafter set forth) in such case made and provided as and for the costs of the County Collector in connection with the handling by him of delinquent special assessments for plaintiff; and admits that the County collector has remitted $171.42 to plaintiff. Plaintiff's reply to the second amended answer of defendants, *inter alia,* denies the statutory authority to withhold said sum.

Plaintiff served and filed a notice and affidavit for summary judgment, which states that said County Collector withholds and retains in his possession the sum of $5,455 of $5,626.42 collected by him on delinquent special assessments for plaintiff for the years

1935 and 1936; that said sum withheld may now constitute a part of the general corporate fund of the County of Cook, and that in that event the County of Cook would be indebted to plaintiff in said sum, and that no part of said sum has been paid to plaintiff and there are no just deductions, credits or set-offs against the same.

Defendants filed an affidavit of merits, or counter-affidavit, which states that plaintiff is not entitled to a judgment in the sum of $5,455, or in any sum whatsoever, against defendants, or either of them; that said sum was the statutory fee allowed the County Collector and is computed by deducting from any collections for plaintiff made by the County Collector in the handling of the special assessments for the period commencing August 1, 1936, and ending April 15, 1937, a fee of fifty cents per item on 10,910 items of delinquent special assessments handled by the Collector and upon which items no collections were made; that the average number of such delinquent items handled by the County Collector is about 200,000 per year; that in and about the handling of such special assessments said County Collector is required to and does employ many hundreds of employees, and provides for the salaries of the same in order that a proper handling of the delinquent special assessments may be had and the application for judgment and sale may be presented to the court in the time required by law, and the proceedings required by statute in connection with the securing of judgments and sale of delinquent special assessments be carried out by the County Collector as required by law; that the statutes set such fees and require the County Collector to handle delinquent special assessments for the villages and to withhold from the collection of such assessments the amount of fifty cents per item for handling delinquent special assessments; that no part of the sum demanded in the affidavit for summary judgment now constitutes a part

of the general corporate fund of the County of Cook and denies that said County is indebted to plaintiff in any sum whatsoever; states that all sums deducted and withheld were immediately paid out by said Collector to reimburse his office and the various other county offices for the expenses incurred in making up and preparing the delinquent real estate list, additional lists for the printer, expenses of the printer for advertising said delinquent lists, for preparing and mailing notices by registered mail, for attending the tax sales and entering judgment as to each tract or lot so advertised for sale, for preparing the records where certain special assessments were withdrawn from sale, for preparing additional records where certain delinquent special assessments were forfeited, and for stamping and marking same in accordance with the notation required therein as to each parcel of land returned delinquent for non-payment of special assessments; that the amount of costs, including compensation for employees necessary, supplies, printing costs, and the multitude of records required to be kept to record the various statutory steps necessary to advertise and sell such delinquent special assessments, actually exceeded the total sums collected through the allowance of a fee to the County Collector of fifty cents per item for each delinquent special assessment collected by him for the villages, and therefore no surplus existed which could be paid to the corporate fund of the County of Cook; that it has been the custom and usage of the County Collector of Cook county for more than twenty-five years to deduct from any collections made by him for delinquent special assessments a charge or fee of fifty cents per item in order to reimburse himself for said statutory expenses, which custom has been followed without protest from said villages or from the City of Chicago for more than twenty-five years, and states that section 94 of the Local Improvements Act shows that the various vil-

lages are allowed to add six per cent of the total to the costs of levying a special assessment improvement, which costs are therefore collected from the owners of each lot or tract in advance, and that the fifty cents per item charge will actually be collected by the villages from the property owner of each tract or lot whenever the owner redeems the same from tax sale or forfeiture.

The summary judgment order recites that the cause came on to be heard upon the motion of plaintiff for the entry of a summary judgment upon the complaint, the second amended answer, and the reply of plaintiff, and that the court considered said pleadings and the motion, the affidavit of merits of defendants in opposition thereto, and the affidavit of plaintiff in support of its motion for a summary judgment and, the court having heard the arguments of counsel, allows said motion and orders that plaintiff recover from defendants the sum of $5,379.50, and costs of suit.

The County Collector claims he is entitled to be paid by the Village fifty cents for each of the items of special assessments of the Village returned delinquent for the years 1935 and 1936, which were not paid, were not sold for want of bidders, and were withdrawn from sale by the Village. There were 10,910 such items of assessments returned to the Village and the amount retained by the Collector as fees on all of the said items was $5,455. The services for which fees were claimed by the Collector and which make up the fifty cents are as follows:

"Registered mail notice......... 20¢ per item
Making up judgment record..... 3¢ per item
Making up printer's list........ 3¢ per item
For securing judgment......... 4¢ per item
Printers' fee for publication... 20¢ per item."

In support of the first item the Collector cites section 186 of the Revenue Act (Smith-Hurd's Ill. Rev. Stats.

1935, ch. 120, par. 174; Ill. State Bar Stats. 1935, ch. 120, par. 204, sec. 186 [Jones Ill. Stats. Ann. 119.210]) which reads as follows:

"174. County collector to send notices.] Sec. 186. In all cases except where lands or lots have been forfeited to the State for non-payment of taxes or in counties having a population of 500,000 or more inhabitants for non-payment of taxes or special assessments, two or more years in succession next preceding the application for judgment and order of sale, the county collector shall at least five days before the date of sale of delinquent lands or lots upon which the taxes or in counties having a population of 500,000 or more inhabitants upon which the taxes or special assessments, remain due and unpaid, *send a notice by registered mail to the owner*, if known, or if not known, to the person shown by the collector's book to have paid the taxes or in counties having a population of 500,000 or more inhabitants, the taxes or special assessments on such lands or lots for the previous year, giving notice of application for judgment and sale of such lands or lots, and date of sale, describing the lands or lots, and the amount of taxes or in counties having a population of 500,000 or more inhabitants the amount of taxes or special assessments, together with interest and costs, due thereon. *For such notice the county collector shall charge twenty (20) cents to be taxed and collected as costs.*"

In support of the second and third items the Collector cites section 21 of the Fees and Salaries Act (Smith-Hurd's Ill. Rev. Stats. 1935, ch. 53, par. 39; Ill. State Bar Stats. 1935, ch. 53, par. 35, sec 21 [Jones Ill. Stats. Ann. 48.023]) which reads as follows:

"39. *Fees of county collectors.*] Sec. 21. County collectors shall be allowed a commission on all money collected by them and paid to the proper officer, of three (3) per cent in counties of the first class; of two (2) per cent in counties of the second class; of one

and one-half (1½) per cent in counties of the third class, excepting on all moneys said county collectors collect for incorporated cities, villages or other municipalities in counties under township organization, upon which said county collectors shall be allowed a commission of one (1) per cent on all moneys collected by them for such cities and paid over by them to the proper officer; and excepting further, in counties having adopted township organization, county collectors shall be allowed on moneys paid over to them by township collectors, as commission on such moneys in counties of first class, only one and one-half (1½) per cent; in counties of second class one (1) per cent, and in counties of third class, only three-fourths (¾) of one per cent. In addition to the foregoing, said county collectors shall be allowed, in settlement of state taxes with the auditor, ten cents per mile for each mile of necessary travel in going to and returning from the seat of government for the purpose of paying over such tax. *They shall also be allowed for making lists of delinquent real estate, to be filed with the county clerk for judgment, three (3) cents for each tract or lot; a like fee for making delinquent lists for the printer,* and for selling lands and town lots ten (10) cents for each tract and three (3) cents for each lot *to be charged and collected as costs.*"

In support of the fourth item the Collector cites section 3, par. 73, of the Fees and Salaries Act (Smith-Hurd's Ill. Rev. Stats. 1935, ch. 53; Ill. State Bar Stats. 1935, ch. 53, par. 69, sec. 3 [Jones Ill. Stats. Ann. 48.056]) the material parts of which read as follows:

"73. Fees of county clerks.] Sec. 3 . . .

". . .

"For making transcript of taxable property for the assessors, four cents; for each tract of land or town lot, and for extending other than State and county taxes, four cents, for each tax on each tract or lot, and each person's personal tax, to be paid by the authority

for whose benefit the transcript is made and the taxes extended. And it shall be the duty of the county clerk to certify to the county collector the amount due from each authority for such services and the collector in his settlement with such authority shall reserve such amount from the amount due and payable by him, to such authority.

"For adding and bringing forward with current tax warrants amounts due for forfeited or withdrawn special assessments, for each lot or tract of land described and transcribed, four cents.

"For computing and extending each assessment or installment thereof and interest, four cents on each description, and for computing and extending each penalty, four cents on each description. Said fees to be paid by the city, village, or taxing body for whose benefit the transcript is made and the assessment and penalties are extended, and it shall be the duty of the county clerk to certify to the county collector the amount due from each city, village or taxing body, for such services, and the collector in his settlement with such taxing body shall reserve such amount from the amount due and payable by him to such city, village or other taxing body.

"   .   .   .

"For noting on collector's warrant special assessments withdrawn from collection for each tract or lot of land, ten cents. Said fee of ten cents to be charged against the lot assessed in the withdrawn special assessment, when brought forward with current tax or when redeemed by the county clerk. And it shall be the duty of the county clerk to certify to the county collector the amount due from each city, village or taxing body for such fees, each year, and the county collector in his settlement with such taxing body shall reserve such amount from the amount due and payable by him to such taxing body.

"   .   .   .

"The following *fees* shall be allowed for services in matters of taxes and assessments, and shall be charged as costs against the delinquent property, and collected with the taxes thereon.

"*For entering judgment, for each tract or lot, four cents.*

". . .

"The following fees shall be audited and allowed by the board of county commissioners and paid from the county treasury.

". . . ."

As to the fifth item the Collector cites section 22 of the Fees and Salaries Act (Smith-Hurd's Ill. Rev. Stats. 1935, ch. 53, par. 40; Ill. State Bar Stats. 1935, ch. 53, par. 36, sec. 22 [Jones Ill. Stats. Ann. 48.024]) which reads as follows:

"40. Printer's fees for advertising delinquent list.] Sec. 22. For printer, for advertising delinquent lists, in all counties, for each tract of land, twenty (20) cents; for each town lot, in counties of the first and second class, ten (10) cents; in counties of the third class, twenty (20) cents, to be taxed and collected as costs.

"The printer shall receive for printing the preamble, the descriptive headings, the affidavit, and any other matter accompanying the delinquent list, the sum of ten (10) cents per line, to be paid by the county.

". . ."

The trial court, after hearing arguments upon the motion of plaintiff for the entry of a summary judgment, rendered a written opinion in which he found in favor of defendants. Thereafter he allowed the parties to file new briefs, and subsequently he rendered a written opinion in which he found in favor of plaintiff. The instant judgment followed the second opinion.

Defendants contend that the fifty cents charges withheld by the County Collector are fees "allowed" him

by the statutes for services rendered by him and that he has the right in his settlement with plaintiff to deduct the fees herein involved, and that said fees are taxed as costs, so that plaintiff can collect from the delinquent taxpayer on behalf of whom it was forced to incur the charges, but that, if the meaning of the statutes involved is in a degree doubtful or open to reasonable debate, then the settled custom and usage of the County Collector for more than twenty-five years in deducting such charges from special assessment settlements with the municipalities with their acquiescence is a contemporaneous construction equivalent to a positive law; that said contemporaneous construction corroborates defendants' construction of the statute. Plaintiff contends that "the charges in question are not fees that the statute requires or contemplates the village must advance to the collector and county clerk;" that the relevant statutes "are not susceptible of two possible constructions and, therefore, custom and usage have no application." Both parties agree that in ascertaining the intention of the legislature all relevant parts of the statutes that bear upon the question to be determined must be considered.

The second, third, fourth and fifth items of the Collector's charge are covered by the Fees and Salaries Act and we will consider them first.

In support of the second and third items in his charge the County Collector argues that section 21, paragraph 39, relates solely to "*Fees* of county collectors" and that as to each fee the word "allowed" is used. The second and third items are covered by the last sentence in paragraph 39 (italicized by us) and the Collector argues that it clearly appears from the words "a like fee" contained therein that said sentence refers only to "fees" of the Collector; that the words "to be charged and collected as costs" were added merely to give the village the authority to col-

lect the items from the delinquent taxpayer when the latter redeemed the property; that the items in the charge are fees as to the Collector but costs when the village collects from the delinquent taxpayer.

As to the fourth item the County Collector relies upon section 3, paragraph 73, as his authority for deducting the charge. He argues that the charge for entering judgment for each delinquent special assessment is by the statute termed a "fee;" that the statute also says that "the following fees [including the charge for entering judgment] shall be *allowed* for services in matters of taxes and assessments." He calls special attention to the fact that section 3 also provides for "Fees of county clerks," and provides that as to each of said fees it shall be the duty of the County Clerk to certify to the County Collector the amount due from each authority for such services *and the Collector in his settlement with such authority shall reserve such amount from the amount due and payable by him, to such authority,* and the Collector insists that it would be an unreasonable interpretation of the statute to hold that the legislature intended that the costs incurred by the County Clerk should be reserved by the County Collector in his accounting with the particular village, but did not intend that the costs incurred by the County Collector should also be reserved by him. The Collector further argues that it clearly appears from the section that the *fee* "for entering judgment, for each tract or lot, four cents," is not one of the fees that shall be audited and allowed by the Chairman of the County Commissioners and paid from the County Treasury, but that it is one that shall be charged as costs against the delinquent property and collected with the taxes thereon.

As to the fifth item the Collector calls attention to the fact that while section 22 provides that the twenty cents fee for publication is "to be taxed and collected as costs," the next paragraph reads that "The printer

shall receive for printing the preamble, the descriptive headings, the affidavit, and any other matter accompanying the delinquent list, the sum of ten (10) cents per line, to be paid by the county," and the Collector argues that the Act shows that when the legislature intends that the county shall pay for any charges it says so in direct language and that as the legislature did not expressly provide that any of the items of the fifty cents charge be paid by the county no other reasonable interpretation of the Act can be made than that the fees in question were to be paid the Collector by the Village. The Collector also calls attention to the fact that the County Board has never made an appropriation to take care of any items such as are contained in the instant charge against the Village.

Plaintiff concedes that "the county collector is allowed certain fees in connection with the levy and extension of the general taxes by the municipality and that these fees are authorized to be deducted by the collector upon settlement with the municipality," but it argues that "because no such express provisions are provided, with reference to the charges in question, the inference is inescapable; it was not intended that they should be so deducted." The Collector contends that there is no reasonable ground for distinction between general taxes and special assessments in respect to their extension and collection by him and he calls attention to the fact that certain parts of paragraph 73 expressly allow him to reserve, in his settlement with the municipality, certain fees due the County Clerk for services *in re special assessments*.

As to the first charge of twenty cents per item for "registered mail notice," defendants cite section 186 of the Revenue Act, heretofore quoted. The Collector argues that this section should be construed to mean that he shall charge the municipality involved the twenty cents, and that the words, "to be taxed and collected as costs" were added merely to give the village

authority to collect from the taxpayer who is at fault for not paying his taxes and on behalf of whom the village was forced to incur this expense; that the collector incurs this expense only in the first instance and that he is entitled to reimbursement from the municipality in a settlement with such body by reserving such amount from the amount due and payable by him to such village.

While, as we have heretofore stated, plaintiff agrees that the intention of the legislature must be deduced from a consideration of every material part of the relevant statutes it insists that the following language, quoted from said statutes, controls: " 'to be charged and collected as costs' with reference to the first two items of 3c each, 'to be taxed and collected as costs' with reference to the third item of 20c, 'shall be charged as costs against the delinquent property and collected with the taxes thereon' with reference to the fourth item of 4c, and 'shall charge 20c to be taxed and collected as costs' with reference to the fifth and last item." Plaintiff argues that the Collector seeks to make out a claim by reading into the statutes provisions that are not there; "that the county collector is allowed certain fees in connection with the levy and extension of the general taxes by the municipality and that these fees are authorized to be deducted by the collector upon settlement with the municipality," but that if it was the intention of the legislature to allow the Collector to deduct the items of his charge in the instant cause in his settlement with the Village "a provision therefor would have been inserted in the statute;" that the quoted language of the statutes cited by it clearly indicates that the items in the claim of the Collector were intended as charges against the property, and not as charges against the municipality. The Collector contends that the question before this court cannot be determined by a reference only to the particular language in the statutes upon which plaintiff

seeks to have the appeal determined and that plaintiff concedes, in its brief, that the intention of the legislature must be deduced from a consideration of every material part of the relevant statutes.

Plaintiff contends that the special assessments collected by the Collector is not the money of the municipality, "but is a trust fund very largely for the persons who performed the work of construction or whose land was taken, if any, in the making of the improvement;" that money collected in any particular instalment is a trust fund to be paid out solely to the owners of the bonds payable from the particular instalment; that money in the custody of the Village from collections of special assessments is a trust fund. In our judgment, no trust relationship between the County Collector and the bondholders of the Village existed, although a trust relationship would exist between the Village and the bondholders as to moneys in the custody of the Village from collections of special assessments. It will be noted that section 73 specifically provides that the County Collector, in his settlement with the taxing body, shall reserve the amount of certain fees of the County Clerk (*in re special assessments*) from the amount due and payable by the Collector to such taxing body.

After a careful consideration of the important question involved in this appeal we have reached the conclusion that the contention of plaintiff that it clearly appears from the relevant parts of the statutes that the items in question charged as fees are not contemplated or warranted by the statutes, cannot be sustained. The fact that the able trial judge in his first opinion held with defendants in the matter of the interpretation of the relevant statutes, is not without significance. If it were necessary for us to determine the question before us from the language of the relevant statutes alone, we would be inclined to uphold defendants' interpretation of the statutes.

In our opinion the most plausible argument that plaintiff can reasonably make is that the intent of the legislature "is in a degree doubtful or open to reasonable debate." But plaintiff could not afford to take such a position upon the motion for a summary judgment because if it did the defense of custom and usage interposed by defendants would then have to be accorded great weight by the trial court in the interpretation of the statutes. If we assume, however, that the intent of the legislature "is in a degree doubtful or open to reasonable debate," we are then aided in our interpretation of the relevant statutes by the following well-established rule of law:

"It is the province and duty of the courts to determine the meaning and true construction of constitutions and statutes, but when the legislative department, in the enactment of laws, and the executive officers, charged with the duty of enforcing or applying constitutional provisions and statutes, have, by contemporaneous, long, uniform and practical construction of a constitutional or statutory provision, accepted and acted upon it as having a definite and particular meaning, the conclusion so reached and acted upon by the legislative department and by executive officers will, in view of the great injury and injustice which would result from a change in such construction and meaning, be accorded great weight by the judiciary when that department of the government is called upon to construe the law, and will, in general, control, whenever the question is in a degree doubtful or open to reasonable debate. (*Bruce v. Schuyler,* 4 Gilm. 221; *Comstock v. Cover,* 35 Ill. 470; *People v. Loewenthal,* 93 id. 191; *People v. Board of Supervisors,* 100 id. 495; *People v. Fidelity and Casualty Co.,* 153 id. 25; *Boehm v. Hertz,* 182 id. 154; *People v. Knopf,* 171 id. 191; *Burke v. Snively,* 208 id. 328; 8 Cyc. 736, 737.) The facts disclosed by this record call, as we think, for the application of this doctrine of construc-

tion to the contention here arising for decision, and should control the inquiry as to the true meaning of the constitutional provision under consideration." (*Nye v. Foreman*, 215 Ill. 285, 288, 289.)

In the second amended answer of defendants they allege that the statute "regarding the 50c fee involved herein has never been construed by the Supreme Court of Illinois, but that it has been the custom and usage of the County Collector of Cook County, for more than twenty-five years to deduct, from any collections made by him for delinquent special assessments," a charge or fee of fifty cents per item on the special assessments not collected, "in order to reimburse himself for expenses incurred and advanced by him in advertising and applying for judgment and sale of delinquent special assessments; that this practice or custom has been followed by the County Collector of Cook County without protest from the complainant Village, or from any of the various Villages in the County of Cook, or from the City of Chicago, for more than twenty-five years." Plaintiff, in its reply to this allegation, does not deny the general custom and usage alleged by defendants, but it asserts that plaintiff protested said custom and usage by instituting a suit, on January 18, 1933, in the Circuit court of Cook County, against the County Treasurer and Ex-Officio County Collector of Cook County, for an accounting as to the fifty-cent items withheld by the County Collector, and that plaintiff, on September 12, 1934, secured a decree in said cause finding that the County Collector was indebted to plaintiff in the sum of $11,550 and costs, and that later, on October 16, 1936, "a Writ of Scire Facias was issued against the County of Cook, a Municipal Corporation, to which writ the County of Cook filed an answer, and that on November 25, 1936, the court found that the County of Cook . . . was a defendant in interest, and that the decree was a direct charge against Cook County, and judgment was entered accordingly

against the County." Under the record we must take as true the allegations of defendants in their second amended answer as to custom and usage. Plaintiff, in the trial court, filed a motion for the entry of a summary judgment in its favor upon the pleadings. It contended in the lower court and contends here that "the statutes here in question are not susceptible of two possible constructions and, therefore, custom and usage have no application." The trial court allowed the motion and entered judgment. The court held that there was no ambiguity in the statutes and that the relevant provisions of the statutes are plain. If the court was right in so holding he would have been justified in considering the defense of custom and usage pleaded by defendants as immaterial. But had the trial court held that the interpretation of the relevant statutes was in a degree doubtful or open to reasonable debate then the question of custom and usage would necessarily play an important part in the interpretation of the relevant statutes, and he would not have entered the summary judgment.

Defendants contend that "the overwhelming custom of more than twenty-five years' standing, possibly fifty years—in continually abiding by special assessment settlements and deductions, indicates *conclusively* that the City of Chicago and all the Villages in Cook County construed this statute to give the Collector the undoubted right to deduct this 50¢ charge and that this custom and usage in behalf of the County Collector is a clear indication of what these taxing bodies understood to be the intention of the Legislature in this instance." This court knows that the City of Chicago and the numerous villages in Cook County have had in the past many able lawyers to represent them, and the action of these municipalities in acquiescing in the custom of the County Collector in making like charges to the instant ones against said City and Villages over a period of at least twenty-five years

must be given great weight in the determination of the meaning of the relevant statutes under consideration. The fact that the County Board has never made appropriations for charges like the instant ones must also be given weight. Interpreting the statutes in question in the light of the general custom and usage, we are satisfied that the County Collector was justified in withholding and retaining from the special assessments collected by him for plaintiff, Village of Broadview, the sum of fifty cents per item for each delinquent special assessment returned delinquent by him and on which he made no collection. The total amount that the Collector was entitled to retain in his accounting with the Village was $5,455.

Defendants strenuously argue that if the judgment in this case is affirmed it will eventually cost the County millions of dollars and threaten it with bankruptcy, for the reason that the County will then be faced with innumerable suits of a similar nature as each one of the many villages in Cook County will undoubtedly file a suit akin to the instant one against the defendants, and that in view of the custom and usage that has prevailed for many years it would be highly inequitable to subject the defendants to the financial burden that would result from such suits.

Certain other points have been raised upon this appeal but it would unduly extend this already lengthy opinion if we were to comment upon them. None of the points could have the effect of changing the conclusion we have reached.

For the reasons stated in this opinion the judgment of the Circuit court of Cook county is reversed.

*Judgment reversed.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.